UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTINA SCHWAB,

        Plaintiff,

      v.                                                                                     21-CV-1082-LJV-HKS
                                                                                                   DECISION & ORDER

TARGET CORPORATION and TARGET
CORPORATION STORE #1010,

        Defendants.

_____

Before the Court is a motion for summary judgment, Docket Item 18, filed by the

defendants, Target Corporation and Target Corporation Store #1010 (collectively,

"Target"), in this slip-and-fall case.  The plaintiff, Christina Schwab, responded, Docket

Item 24, and Target replied, Docket Item 26.  For the reasons that follow, material

issues of fact preclude summary judgment, and this Court therefore denies Target's

motion.

## **BACKGROUND**

The parties agree that at about 4:00 p.m. on June 2, 2019, Schwab slipped and

fell on a puddle of liquid in checkout lane five at the Target store located at 4920 Transit

Road, Depew, New York 14043.  Docket Item 24-1 at ¶¶ 5-6; Docket Item 31 at ¶¶ 1-2.

The incident was captured on surveillance video, which spans from about half an hour

before the incident until about half an hour after it.  Docket Item 24 at 6; Docket Item 31

at ¶ 6.  The portion of the floor on which Schwab slipped is largely blocked by the

checkout counter in the surveillance video.  Docket Item 24-1 at ¶ 11.  The video does

not show any other customers slipping on the floor, however, and does not show what

caused the spill.  Docket Item 24-1 at ¶ 11; Docket Item 31 at ¶ 7.

Following Schwab's fall, the Target employee who was the "Leader on Duty"

("LOD") filled out a "Guest Incident Report," Docket Item 18-8 at 2, and a "LOD

Investigation Report," Docket Item 18-10 at 2.[1]  In the Guest Incident Report, the LOD

stated that Schwab had described slipping on "a huge puddle of water" and further

noted the "condition" of the floor to include "clear liquid (water)."  *Id.* at 2.  The LOD

Investigation Report, on the other hand, stated that the LOD had been "told there was

some clear liquid on the floor" but "did not witness" it because "[t]he slip scene had

already been cleaned up" by the time the LOD arrived.  Docket Item 18-10 at 2.

Several other employees each filled out a "Team Member Witness Statement."

Docket Items 18-11, 18-12, and 18-13.  The first employee stated that she had been

collecting hangers in lane seven when Schwab slipped in lane five.  Docket Item 18-11

at 2.  Prior to the incident, the employee had been "rolling the hanger cart from lane

[five] to [seven]."  *Id.*  She described "the condition of the area at that time" as having "a

spill of clear liquid from the previous guest on lane [five]."  *Id.*  And she described the

"clear liquid" not as water but as Febreze.  *Id.*

The second Team Member Witness Statement was from an employee who

"responded to the Code Green."[2]  Docket Item 18-12 at 2.  He stated that at the time of

---

[1] Page numbers in docket citations refer to ECF pagination.

[2] A "Code Green" refers to when there has been an accident in the store.  *See*
Docket Item 18-7 at 35.

the accident, "[t]here was liquid on the ground."  *Id.*  More specifically, he said that there

was a "small amount of liquid from [a] leaking product."  *Id.*

The third Team Member Witness Statement was from an employee who "heard

the incident occur."  Docket Item 18-13 at 2.  She stated that there was a "clear liquid,"

which she described as "water," on the floor.  *Id.*  She was working as a "cashier near

the fall" and was "cashing [out] a customer" when it occurred.  *Id.*

Target never interviewed the cashier who was in lane five at the time of the

incident.  *See* Docket Item 18-7 at 24.

## LEGAL PRINCIPLES

"A motion for summary judgment may be granted 'if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law.'"  *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting Fed. R. Civ.

P. 56(a)).  "Summary judgment is appropriate when 'there can be but one reasonable

conclusion as to the verdict,' i.e., 'it is quite clear what the truth is,' and no rational

factfinder could find in favor of the nonmovant."  *Id*. (italics and internal citations omitted)

(first quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); and then

quoting *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962)).  Conversely,

"[s]ummary judgment should be denied if, when the party against whom summary

judgment is sought is given the benefit of all permissible inferences and all credibility

assessments, a rational factfinder could resolve all material factual issues in favor of

that party."  *Id*.  "In deciding such a motion, the court cannot properly make credibility

determinations or weigh the evidence."  *Id*.

3

**DISCUSSION**

"To establish a prima facie case of negligence under New York law, 'a plaintiff must [establish:] (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027, 489 N.E.2d 1294, 1294-95 (1985)). "In this case, the 'duty' owed is Target's 'common-law responsibility to show due care to customers by maintain[ing] its premises in a reasonably safe condition.'" *See Kirbaran v. Target Corp.*, 720 F. Supp. 3d 267, 274 (S.D.N.Y. 2024) (some internal quotation marks omitted) (quoting *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021)). To show a breach of that duty, Schwab "must offer evidence 'that [Target] either created the dangerous condition or had actual or constructive notice of the condition and its dangerousness.'" *See id.* (quoting *Borley*, 22 F.4th at 79).

Schwab does not contend that Target created the condition; rather, she says that it had actual or constructive notice. *See generally* Docket Item 24. "Actual notice . . . 'requires the plaintiff to prove that the defendants were, in fact, aware of the dangerous condition.'" *Gonzalez v. K-Mart Corp.*, 585 F. Supp. 2d 501, 504 (S.D.N.Y. 2008) (quoting *Quarles v. Columbia Sussex Corp.,* 997 F.Supp. 327, 332 (E.D.N.Y. 1998)). "To constitute constructive notice, a defect must be visible and apparent[,] and it must exist for a sufficient length of time prior to the accident to permit [the] defendant's employees to discover and remedy it." *Kirbaran*, 720 F. Supp. 3d at 274 (quoting *Gordon v. Am. Museum of Nat. History*, 67 N.Y.2d 836, 837-38, 492 N.E.2d 774, 775 (1986)). "Where there is no direct evidence of notice, '[c]onstructive notice may be

4

inferred based on the circumstances surrounding the injury and the condition of the premises.'" *Id.* (quoting *Touri v. Zhagui*, 2010 WL 779335, at *3 (S.D.N.Y. Mar. 5, 2010)).

Schwab argues that "[a] review of the surveillance video provides no explanation for the source of the puddle, suggesting that the puddle was present *before* the recorded portion of the video provided (at least 30 minutes)." Docket Item 24 at 15. Moreover, Schwab notes, this is not a case where the hazard was hidden or remote; on the contrary, she says, it is undisputed that three to four of Target's "employees were in the immediate vicinity of the puddle . . . for the entire duration of the surveillance video." *Id.* at 16. According to Schwab, that is sufficient to create an issue of fact about whether Target had actual—or at least constructive—notice. For the reasons that follow, this Court agrees.

First, the spill here occurred in the checkout area where multiple employees were present. In particular, the surveillance video shows the lane five cashier walking around to the back of the cart of the customer who checked out immediately before the fall to put a large item in that customer's cart. *See* Exhibit L at 28:45 (4:05 p.m.). So even assuming that—as Target claims—a leaking bottle of Febreze from that customer was the culprit, the lane five cashier presumably should and would have spotted the leak. But Target apparently never even interviewed that employee. *See* Docket Item 18-7 at 24 ("Q. Did the cashier that's shown at 4:04:19 [p.m. on the surveillance video] advise you that the patron buying the product complained of or said they observed any leakage from any of the products they purchased that day? A. This team member was never

questioned, no."). Thus, there is a question of fact as to whether some Target employee actually saw the spill on the floor or reasonably should have noticed it.

Target contends that it did not have notice because "the hazard was created, *at most*, two minutes before [Schwab] walked through the area when a previous customer purchased a bottle of Febreze that was later found to be leaking." Docket Item 18-2 at 12 (bold and underline omitted). But Target has not established as a matter of law that the liquid on the floor was Febreze. Indeed, at least two Target employees called the substance water. *See* Docket Item 18-8 at 2 (describing substance as "clear liquid (water)"); Docket Item 18-13 at 2 (witness report that the substance was a "clear liquid," which she described as "water," on the floor). So while the surveillance video suggests that a leaking bottle of Febreze may well be a likely explanation, it is not the only possibility.

Moreover, and as noted above, even if the spill was from the Febreze container as Target asserts, several employees in the vicinity could have—and perhaps should have—seen and remedied the situation. So this is not like the cases that Target cites in which a spill occurs in an aisle where employees are not stationed. *See, e.g., Gallagher v. Target Corp.*, 2020 WL 4741096, at *4 (W.D.N.Y. July 9, 2020), *report and recommendation adopted*, 2020 WL 4739615 (W.D.N.Y. Aug. 14, 2020); *Casiano v. Target Stores*, 2009 WL 3246836, at *4 (E.D.N.Y. Sept. 24, 2009).

Nor is this like *Gonzalez*, where a K-Mart employee discovered a spill, "went looking for a caution cone and paper towels to clean up the mess," and while he was gone, the plaintiff slipped and fell. 585 F. Supp. 2d at 505. Here, there were multiple employees in the vicinity who immediately could have assisted or directed customers

6

away from the spill; at the very least, there is a question of material fact on that issue.

In fact, the surveillance video shows four employees standing in or around lane five and

cleaning up the spill with paper towels less than thirty seconds after the fall.  *See* Exhibit

L at 30:25 (4:06 p.m.).

Thus, it is for a jury—not this Court—to decide whether Target had actual or

constructive notice of the spill.  Summary judgment therefore is denied.

## CONCLUSION

For all the reasons noted above, Target's motion for summary judgment, Docket

Item 18, is DENIED.  The Court will schedule a status conference to set a trial date.


SO ORDERED.

Dated:   February 14, 2025
             Buffalo, New York


                                                          */s/ Lawrence J. Vilardo*
                                                         LAWRENCE J. VILARDO
                                                         UNITED STATES DISTRICT JUDGE